## William F. Orcutt v. Ella Williams.

1. WAIVER—*Of Strict Rights Under Chattel Mortgage.*—Where the mortgagee agrees that the mortgagor may have an extension of the indebtedness, and make payments thereon to suit his convenience, and payments are so made and accepted subsequent to the maturity of the indebtedness, such facts amount to a waiver of the strict rights of the mortgagee to claim the property, either because of a default in the mortgage or otherwise.

2. CHATTEL MORTGAGE—*Sales Under.*—Under a power of sale in a chattel mortgage authorizing the mortgagee, in case of default, to sell the property at public or private sale, the mortgagee can not sell the mortgaged property with a large quantity of other property in bulk for a lump sum.

Replevin.—Appeal from the Circuit Court, Cook County; the Hon. CHARLES G. NEELEY, Judge, presiding.    Heard in this court at the March term, 1896.    Affirmed.    Opinion filed April 13, 1896.

KNIGHT & BROWN and WILLIAM G. ADAMS, attorneys for appellant.

P. O'NEIL BYRNE, attorney for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The appellee sued out a writ of replevin before a justice of the peace to recover a certain piano to which she claimed ownership and the right of possession, and which, as she complained, was in the possession of and wrongfully withheld by the appellant.

The return of the writ showed a demand upon appellant and his refusal to deliver the property.

Upon an appeal by appellant to the Circuit Court, this judgment for $200 damages was recovered against him.

The appellee, being the owner and in possession of the piano, on March 5, 1891, borrowed of a Mrs. Thompson a sum of money, and to secure the loan gave her promissory note for $80, payable to the order of one Cain, a clerk for Mrs. Thompson, on the fifth of June following, and to secure said note executed a chattel mortgage upon the piano. Two days later the appellee moved her residence, and having no convenient place to keep the piano, she, with the consent of Mrs. Thompson, placed it for storage in a hotel then kept and occupied by Mrs. Thompson, and it was put into one of the rooms of the hotel. Subsequently, and while the piano remained in the hotel, Mrs. Thompson, by bill of sale, dated July 13, 1891, sold her lease of said hotel, together with all the furniture and fixtures therein, to the appellant, who took possession on August 1, 1891, by virtue of such sale to him, and from thenceforward claimed the piano as his own, although his claim to the piano was not known to the appellee until after she had paid to Mrs. Thompson all of said indebtedness.

It will be observed that the note secured by the chattel mortgage matured, allowing for days of grace, on June 8, 1891.

The note itself bore an indorsement of $23, as paid thereon on June 9, 1891, and various receipts introduced in evidence showed other payments to have been made by the appellee,

Orcutt v. Williams.

on August 21, 1891, of $17, September 7, 1891, of $30, and finally full payment on October 5, 1891, and it was when the last payment was made that appellee asked for the piano to be delivered back to her. There was also evidence that Mrs. Thompson agreed that appellee might have an extension of her note, and make payments thereon to suit her convenience, and that the payments were made in pursuance of that agreement; and we think that such agreement, taken in connection with the acceptance of the payments subsequent to the maturity of the indebtedness, amounted to a waiver of the strict rights of the mortgagee to claim the piano, either because of default in the mortgage, or otherwise. Indeed, it is quite clear that Mrs. Thompson never claimed to have or keep possession of the piano adversely to the appellee, but always recognized her right to it, subject only to the payment of the debt.

And there was evidence that after appellant bought the hotel, his partner in the business of running it, gave express permission to the appellee to continue leaving the piano there so long as it was not in the way, and told her he would send her word if they wanted her to remove it.

Furthermore, though nothing had occurred between the mortgagee and the appellee to change the strict rights of the mortgagee after default under the mortgage, we do not think the mortgagee had the power under the terms of the mortgage to sell the piano, as was done, with all the other furniture of the hotel, in bulk for a lump sum.

The power contained in the mortgage, was in case of default to sell the piano " at public or private sale, and after satisfying the amount due and all expenses, the surplus, if any remain, shall be paid over to said mortgagor."

No sale in conformity with such power was ever attempted to be made by the mortgagee. The bill of sale to appellant, and under which he claims the piano, was for the lump sum of $3,900, and included all of the " furniture, fixtures, lease," etc. There is nothing to indicate a separate sale of, or fixed price for, the piano by itself, and therefore whatever the value of the piano, there could be no ascertained surplus upon such a sale.

We do not think the appellant can claim title to the piano under a sale so made by the mortgagee.

If there were lacking in the evidence in behalf of appellee a sufficient demand upon appellant to found trover upon, we think it was supplied by appellant's testimony that appellee called upon him and claimed the piano.

Upon the whole record, the judgment must be affirmed.